White, J.
 
 [1]
 

 delivered the following statement of the case and opinion of the Court: —
 

 The bill of complaint states that the complainant, Nancy, was the widow and administratrix of Thomas Jenkins, deceased, who died in the month of August, 1797, in the State of North-Carolina; that she not having skill to manage the administration procured her brother, the defendant, to receive money and tobacco of said estate to the amount of
 
 1228l.
 
 6s.
 
 8d.
 
 into his hands, to pay debts, &c. and that the defendant afterwards exhibited to the County Court an account current, in which was stated sundry credits claimed for monies disbursed for the benefit of the estate ; that the defendant afterwards exhibited against her a private account, and alleging that such account was correct, procured her to assume the payment of it, on condition that a credit should be allowed her of
 
 701. 5s.
 
 Id.;
 
 *244
 
 that in said private account there are various errors, mistakes and omissions to her prejudice which are specified in the bill.
 

 The complainants further state, that suits have been commenced against them on the settled account. The prayer is for an injunction; and that the settlement may be opened and corrected.
 

 The answer of the defendant admits his agency, and alleges that he paid considerable sums for said estate and the family out of his own funds; that these sums formed the
 
 debits
 
 in said private accounts, and that the accounts were fairly stated, and all just credits given; and that the balance there struck is justly due. He answers particularly each averment specified in. the bill and denies it, and exhibits a copy of the private account, at the bottom of which is a promise under the hand and seal of the complainant Nancy to pay the balance struck.
 

 In examining this case, the private accounts, the account current, as it has been called, and much other testimony has been produced. It appears that on the trial at law the jury have given a credit for
 
 501.;
 
 and that the judgment has been taken for the balance after that sum is deducted.
 

 It has been urged by the complainant’s counsel that enough appears from the proof to show that in some particulars error was actually committed in the settlement, and that the Court will at least send the case to the master for his statement and report.
 

 It appears to me that as the acknowledgment of the balance due is under the head and seal of the complainant Nancy, it was not competent for her to impeach it in a court of law. The complainants might certainly well come into this Court if injured in that settlement; but when they do come into this Court, they will have the burden of proof upon them. They must first allege particularly the errors which exist, and then produce satisfactory evidence to support those allegations. The defendant need only deny the errors, — the instrument will be deemed correct until proved otherwise. In this case the proof is before the Court, and if it supports the complainant’s allegations, the Court may give relief without referring the matter to a master; and indeed unless the proof will justify a statement from the master on which they would relieve the party, the reference would only increase expense without a benefit to the parties. The complainant was the administratrix; the account current is nothing more than the account rendered to the County Court, in which she is debited with the whole amount of the personal estate, and in which she claims credit for all payments made, whether by herself or the defendant, who was her agent. The account was drawn by him and presented to the Court by her when he was not in the country. Unconnected with other evidence, it proves nothing in this cause. But it is alleged other proof shows the amount of tobacco put in his hands, to be larger than the amount stated in this account, and of course that he ought to credit her
 
 *245
 
 with the difference. Suppose the facts to be as stated ? Her administration account rendered to the Court upon oath will be incorrect. If he is bound to account with her for a larger quantity than that stated-in her account rendered, she immediately becomes responsible for the same amount and ought to charge herself with it in the account which she rendered. Is it not very probable that as she lived where the tobacco was raised, knew of its being taken to market and sold, that she would shortly after it was sold recollect the precise amount much better than any man would twelve or thirteen years after it ? and if she knew the amount she would certainly see that it was correctly stated before she would swear to it. Yet if it be true that the amount is incorrectly stated, we are forced to consider not only that the defendant for this difference would upon his oath swerve from the truth ; but that he would induce a sister with whom he seems to have been on friendly terms, to do so likewise. Before we admit a supposition so disgraceful, we ought to have pretty clear evidence. The testimony of Lynch alone goes to fix the amount of the tobacco raised in 1797 and 1798, and he does not speak positively as to the quantity. Mr. Monroe speaks of the years 1799, 1800, and 1801, but his testimony would increase the quantity very little, and he seems to have no recollection that he can himself depend upon. Lynch places the actual quantity in 1797 higher than charged ; in 1798 lower; and his statement as to the proportion coming to him does not correspond with the sum he received. Upon this part of the case, I am inclined to believe that the amount charged is perhaps the nearest correct, — at all events I am not convinced that the proof does support this part of the case.
 

 We have no evidence of any funds furnished the defendant to pay the debts with but the tobacco. We see that debts to a larger amount than it was sold for have been paid, and we cannot say precisely by whom. It is most probable from the proof it was by the defendant. May we not then safely infer that some of these payments were out of his own funds, and that he has a just claim for that amount. Some of the items in the private account which are attacked by the bill, are clearly supported by the witnesses of the complainants themselves. There is no satisfactory evidence to show that any of them are wrong. Before we attempt to correct an account we must ascertain what alterations will put it right. Should we attempt from information before us to change this settlement, I think it more probable we should put it farther from the truth. Two witnesses seem to have been at this settlement, and neither of them is produced; nor is there any testimony to show advantage or improper conduct in the settlement; and after this lapse of time I will not distrust it.
 

 This woman was left a widow in the neighborhood of her brother; she is unequal to the settlement of the estate without assistance; he is applied to and undertakes. The debts are paid and the estate wound up;
 
 *246
 
 the parties on the best terms; a settlement is then made between them relative to his agency. She acknowledges he has paid out of his own money 113Í and gives an instrument promising to repay it. Is it reasonable, after the lapse of fourteen or fifteen years, to suppose he can recollect the whole transactions and have proof to explain them ? They had mutual confidence j each would therefore take less trouble to keep vouchers and be ready to explain their transactions.
 

 Whiteside
 
 and
 
 Haywood,
 
 for the complainant.
 

 Dichinson,
 
 for the defendant.
 

 To impose upon and betray the confidence reposed by a woman destitute of any assistance, would be most disgraceful; and how we could sufficiently censure a brother who had betrayed the trust reposed in him by a sister I am at a loss to say. As there is in this case no evidence to justify the belief that there is any error in the settlement sought to be impeached, the bill must be dismissed with costs.
 

 [1]
 

 Original Note. — Absent Overton, J.